UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN C. BAKER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-0138-LJM-TAB |
| | ) | |
| MICHAEL J ASTRUE, Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, John C. Baker ("Baker"), requests judicial review of a final decision of defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), who found that Baker was not entitled to a period of disability and Disability Insurance Benefits ("DIB"). The Court rules as follows.

### I. BACKGROUND

Baker was born on June 30, 1962. R. at 63. Baker was forty-six years old at the time of Administrative Law Judge John H. Metz's (the "ALJ") decision. R. at 9, 63. Baker has completed the twelfth grade. R. at 74. He has performed past relevant work as a meat cutter and grocery store manager. R. at 75-76. He asserts he became disabled on November 4, 2005, due to a back injury, back spasm, cramping in the legs and foot, and numbness in the right leg and foot. R. at 56, 100.

On March 25, 2004, and April 14, 2004, Baker received sacroiliac joint injections to treat sacroiliitis.[1]  R. at 269-275.  On June 26, 2004, and August 20, 2004, Baker received diagnostic selective nerve root injections to treat lumbar radiculopathy.[2]  R. at 261-268.  Baker's past medical history also includes hypertension, which has been treated by his physician.  R. at 242.

On November 4, 2005, Baker received medical attention due to diarrhea, vomiting, sweating, lightheadedness, and gastrointestinal bleed caused by Indocin.  R. at 140.  Baker felt better by November 7, 2005, as the effects were apparently resolved.  R. at 139.  On November 14, 2005, Baker felt better and had experienced no other side effects of medication.  R. at 138.

To monitor his condition, Baker completed pain management reassessment forms between October 2004, and January 2006.  R. at 168-237.  On November 16, 2005, Baker reported no new medication side effects.  R. at 176.  On December 14, 2005, Baker complained of increased sedation caused by Zanaflex, and Dr. Edward J. Kowlowitz prescribed baclofen instead.  R. at 170.  On January 23, 2006, Baker's cervical CT scan showed congenital spinal stenosis[3] of the cervical spine, moderate C5-6 foraminal[4] stenosis, and modern C4-5 facet joint degeneration.  R. at 295.

---

[1] "Sacroiliitis" is defined as "[i]nflammation of the sacroiliac joint."  STEDMAN'S MED. DICT. ("STEDMAN'S") 1714 (28th Ed. 2006).

[2] "Radiculopathy" is defined as "[d]isorder of the spinal nerve roots."  STEDMAN'S 1622.

[3] "Stenosis" is defined as "[a] stricture of any canal or orifice."  STEDMAN'S 1832.

[4] "Foramina" is the plural of "foramen," defined as "[a]n aperture or perforation through a bone or a membranous structure."  STEDMAN'S 756.

On February 21, 2006, Baker entered the Family Medical Center and received a physical examination. R. at 125-26. Baker had a normal gait and could get on and off the examination station without support. R. at 126. Baker declined to walk on his heels and toes, but he could squat partially. R. at 127. His right leg could not be raised straight due to pain and his left leg could only be raised straight to twenty degrees. R. at 127. The physician concluded that Baker did not have any impairment in sitting, should have been able to stand and walk for at least two to four hours in an eight-hour day, and should have been able to lift, carry, and handle at least thirty to forty pounds. R. at 127.

On March 20, 2006, state agency physician Dr. Jonathan Sands ("Dr. Sands") performed a physical residual functional capacity ("RFC") assessment. R. at 124. Dr. Sands reported that Baker could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. R. at 118. Baker could stand and/or walk for about six hours in an eight hour workday, sit for about six hours in an eight hour workday, and occasionally climb, balance, stoop, kneel, crouch, or crawl. R. at 118-19. In addition to completing the RFC assessment, Dr. Sands completed a Disability Determination and Transmittal form on March 22, 2006. R. at 36. Dr. Sands diagnosed Baker with discogenic and degenerative back disorders and cardiac disorder, but Dr. Sands determined that Baker was not disabled for Social Security purposes. R. at 36. Further, on May 5, 2006, Dr. Valentine Corcoran, a state agency physician, reviewed Baker's condition and completed a Disability Determination and Transmittal form, finding that Baker was not disabled for Social Security purposes. R. at 35.

On September 11, 2006, Baker underwent CT post-myelogram of the cervical and lumbar spine. R. at 297. There was status post fusion from L4 to S1 with satisfactory

interbody fusion at both levels, and moderate to moderately advanced central stenosis at L3-4. R. at 298. There was mild central disc protrusion at C5-6 with mild central stenosis compressing the C6 nerve root; and mild disc degeneration with degenerative disc bulge and mild canal stenosis at C6-7. R. at 300.

On October 24, 2006, Baker was examined after complaints of neck pain and arm numbness. R. at 287. Baker had a normal gait and was able to heel and toe walk. R. at 287. His upper extremities had full range of motion, and his legs showed no abnormalities. R. at 288. His head and neck had a full range of motion and appeared stable. R. at 288. Baker had a full range of back motion, but was diagnosed with degeneration at C5-6 and C6-7, with foraminal stenosis at both levels and possible nerve root impingement. R. at 288.

On November 15, 2006, Dr. Jean-Pierre Mobasser ("Dr. Mobasser") performed back surgery on Baker at C5-6 and C6-7. R. at 285, 339. Dr. Mobasser released Baker on November 16, 2006. R. at 285, 339. On December 14, 2006, Baker had a follow-up with Dr. Mobasser, who reported that Baker was doing well and had no complaints other than a small amount of neck pain. R. at 284.

On December 18, 2007, Sheila Abebe, FNP, ("Abebe") saw Baker for pain management. R. at 302-03. Baker complained of constant neck pain, low back pain, and concordant paresthesia. R. at 302. Baker was prescribed medications. R. at 303.

On January 8, 2008, Dr. Mobasser saw Baker again, and Baker complained of pain in his neck and the right side of his body. R. at 283. Baker had normal strength in his upper extremities, but he also had pain in his neck and right shoulder. R. at 283. A CT

scan showed solid fusion at C5-6 and C6-7.  On February 25, 2008, Dr. Mobasser performed surgery on Baker to repair a herniated disc at L4-5.  R. at 333.

Baker applied for a period of disability and DIB on November 30, 2005, stating he had been disabled since November 4, 2005.  R. at 56, 63, 100.  The Agency denied Baker's application initially and upon reconsideration.  R. at 35-36, 41, 46.  Plaintiff then requested a hearing.  R. at 39.  On August 5, 2008, Baker appeared with counsel at an administrative hearing before the ALJ.  R. at 342.  Timothy Bobrowski ("Bobrowski") testified as a vocational expert.  R. at 380.

At the hearing, the ALJ asked Bobrowski what jobs an individual like Baker could perform assuming he could lift/carry twenty pounds occasionally and ten pounds frequently; sit six hours a day for no more than one hour at a time; stand/walk for two-to-four hours a day for no more than thirty minutes at a time occasionally bend, stoop, kneel, or climb stairs; and avoid ladders, ropes, scaffolding, or unprotected heights.  R. at 381.  Bobrowski replied that such an individual could perform a total of about 34,000 unskilled light and sedentary jobs in Indiana as a hand packer, bench assembler, and inspector.  R. at 382. He stated that such a person could not perform Baker's past relevant work either as Baker performed it or as it is generally performed.  Bobrowski testified that his testimony was consistent with the Dictionary of Occupational Titles.  R. at 382.

Baker testified that he believed he could not work because of pain in his back, hips, right leg, left arm, and neck. R. at 353-54.  Baker testified that his prescribed medications had been causing side effects, including dizziness and drowsiness.  R. at 356.

On October 29, 2008, the ALJ decided that Baker was not disabled.  R. at 19.  The Appeals Council upheld the ALJ's decision and denied the request for review on December

11, 2008, making the ALJ's decision the Commissioner's final decision. R. at 5-7. Pursuant to 42 U.S.C. § 405(g), Baker filed this civil action for judicial review of the Commissioner's final decision.

## II. **DISABILITY AND STANDARD OF REVIEW**

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfied the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See, e.g.*, *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. DISCUSSION

#### A. THE ALJ'S FINDINGS

The ALJ first noted that Baker met the disability insured status requirements on his alleged onset date and that he continued to satisfy them through December 31, 2010. R. at 12. At the first step of the disability analysis, the ALJ found that there was no evidence Baker engaged in substantial gainful activity after his alleged onset date. *Id.* Next, the ALJ determined that Baker had the following severe impairments: low back pain; status post motor vehicle accident; lumbar fusion; coronary artery disease; status post old myocardial

infarction; hypertension, controlled with medication; obesity; and tobacco use. *Id.* At the next step, the ALJ concluded that the record failed to establish the existence of an impairment or combination of impairments that medically equaled an impairment specified in the Listing of Impairments. *Id.*

Between the third and fourth steps, the ALJ determined that Baker had the RFC to perform light work, but that he could lift no more than twenty pounds occasionally or ten pounds frequently; stand or walk for two to four hours in an eight-hour day, for no more than thirty minutes at a time; and sit for six hours in an eight hour day, for no more than one hour at a time. R. at 15. The ALJ also determined Baker could only occasionally bend, stoop, kneel, or climb stairs, and that he must avoid reaching over his head or exposing himself to concentrated levels of respiratory irritants. *Id.*

At step four of the sequential analysis, the ALJ found that Baker was unable to perform any of his past relevant work. R. at 18. At step five, the ALJ determined there were a significant number of jobs in the national economy that Baker could perform, and thus the ALJ found that Baker was not disabled. R. at 18-19.

### B. BAKER'S ARGUMENTS ON APPEAL

Baker makes several arguments on appeal, and the Court considers each in turn. First, Baker argues that the ALJ failed to obtain a medical opinion as to the possible equivalence of Baker's impairments to the the listed impairments. The third step of the five-step process set forth in 20 C.F.R. § 404.1520(a)(4) states that "[i]f the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfied the duration requirement, the claimant is disabled." The ALJ is required to obtain

the opinion of a physician or psychologist designated by the Commissioner to determine the issue of equivalence to a listed impairment.  Social Security Ruling ("SSR") 96-6p.

Baker argues that no such opinion was ever received because only a RFC form was completed by Dr. Sands.  If this were true, as in *Wadsworth v. Astrue*, the ALJ would have been in error because RFC forms do not provide space for comment as to whether the patient's impairments equal a listed impairment.  No. 1:07-cv-0832, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008).  However, in addition to evaluating Baker's residual functional capacity, Dr. Sands also completed a Disability Determination and Transmittal form, finding that Baker's condition did not equal a listed impairment.  R. at 36.  Two months after Dr. Sands's disability evaluation, Dr. Corcoran completed a Disability Determination and Transmittal form and affirmed Dr. Sands's finding.  R. at 35.

Nevertheless, Baker argues that even if a physician designated by the Commissioner did previously review Baker, according to SSR 96-6p the ALJ should have obtained an updated medical opinion from a medical expert because there was additional evidence received that could modify the finding that his impairment was not equivalent to a listed impairment.  However, under SSR 96-6p, an updated medical opinion is necessary when "in the opinion of the [ALJ]" the additional evidence received may change the physician's finding that the impairment(s) are not equivalent in severity to a listed impairment.  Therefore, the ALJ's Listings decision is supported by substantial evidence.

The record shows substantial evidence that could cause a reasonable mind to conclude that the additional medical information would not likely change the physicians' findings.  The additional medical evidence shows Baker did have new complaints and underwent surgery after being found not disabled, but the record also shows that

9

treatments were successful.  Although Baker has new evidence in his medical record after Dr. Sands and Dr. Corcoran found him not disabled for Social Security purposes, a reasonable mind would conclude that the new evidence would not change their opinions.  Therefore, the ALJ's Listings decision is supported by substantial evidence.

Baker next argues that the ALJ erroneously dismissed Baker's allegations of the severity of his medication's side effects, and that when asking the VE a hypothetical question as to Baker's ability to work, the ALJ omitted the side effects of Baker's medications from his impairments.  "The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).  As to the ALJ's own determination, the ALJ stated that "[a]lthough the claimant has alleged various side effects from the use of medication, the medical record, such as office treatment notes, do not corroborate those allegations."  R. at 17.  The ALJ's determination that Baker's allegations are not corroborated by his medical record is supported by substantial evidence.  In his attempt to receive Disability Insurance Benefits, Baker complained of side effects from medication such as drowsiness, dizziness, fatigue and sedation.  R. at 69-71, 88-89, 97, 340, 356.  However, the record shows Baker making only sporadic complaints of medication side effects to physicians.  R. at 134, 135, 170.  Further, the record shows that when Baker complained of medication side effects, his physicians stopped prescribing the medication at fault and began a different prescription.  R. at 170, 321.  Accordingly, substantial evidence supports the ALJ's decision that Baker's allegations of the severity of his side effects were not supported by the medical evidence in the record.

Therefore, the ALJ's hypothetical question to the vocational expert did not need to reference Baker's alleged side effects.

Lastly, Baker argues that the ALJ failed to assess Baker's RFC on a function-by-function basis because no assessment was made regarding Baker's pushing, pulling, or handling abilities and limitations. He argues that SSR 96-8p requires a complete function-by-function analysis before an ALJ can express residual functional capacity in terms of exertional levels of work. Baker errs, however, in this interpretation of SSR 96-8p. This section only requires a function-by-function analysis to the extent that evidence exists in the case record for each function. If no allegation of a physical or mental limitation or restriction of a specific functional capacity has been made, and the case record does not provide information that such a limitation or restriction exists, SSR 96-8 states that the ALJ must consider the individual to have no limitation or restriction with respect to that functional capacity.

To support his contention that the ALJ committed error by not analyzing Baker's limitations in pushing, pulling, and handling, Baker incorrectly relies on *Warmouth v. Bowen*, 798 F.2d 1109 (7th Cir. 1986). *Warmouth* requires that an ALJ use reliable evidence in determining what impact the applicant's limitations have on his or her employment opportunities. *Id*. at 1112. Here, because allegations regarding the work-related limitations of pushing, pulling, and handling were not made, and such limitations were not shown to exist in the case record, SSR 96-8p required the ALJ to find that Baker had no limitations or restrictions with respect to those functional capacities. As to the limitations alleged by Baker or shown to exist in the case record, the ALJ did use reliable evidence in determining what impact those limitations have on his employment

11

opportunities by consulting CFR 404.1567(b) and a vocational expert. *See Warmouth*, 798 F.2d at 1112.

Baker also argues that the ALJ insufficiently linked the evidence to his conclusions because he did not discuss any evidence pertaining to the functions of pushing, pulling, and handling.  As has previously been established, when medical evidence exists "the ALJ need not provide a written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (citing *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). Without an allegation by Baker or evidence in the record of limitations upon these functions, failing to include them in the ALJ's discussion and conclusion is not a reversible error.  The ALJ sufficiently discussed and analyzed the existing evidence in making conclusions.

## IV. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**. Final judgment shall be entered accordingly.

IT IS SO ORDERED this 8th day of February, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov